UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PACIFIC MEDICAL CENTER,<br><br>       Petitioner,<br><br>  v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WORKERS--WEST,<br><br>       Respondent. | No. C 06 4685 SC<br><br>ORDER PARTIALLY VACATING <u>ARBITRATION AWARD</u> |

## I. **INTRODUCTION**

On May 19, 2006, Arbitrator Gerald McKay ("Arbitrator") issued an award ordering California Pacific Medical Center ("Employer") to pay Service Employees International Union, United Healthcare Workers--West ("Union") damages in the sum of $171,082.48 plus interest.  See <u>California Pacific Medical Center and SEIU United Healthcare Worker - West</u>, Award re: Appropriate Remedy for Violations of Fair Representation and Code of Conduct, McKay Case No. 04-061(A) ("May 19, 2006 Award"), Docket No. 1; California Pacific Medical Center's Petition to Vacate Arbitration Award ("PTV"), Ex. C.  The May 19, 2006 Award followed an earlier award by the Arbitrator issued on November 30, 2004.  See <u>California Pacific Medical Center and SEIU United Healthcare Worker - West</u>, Award re: Violation of Fair Representation and Code of Conduct, McKay Case No. 04-061 ("November 30, 2004 Award" or "Nov. 30, 2004 Award;" together with the May 19, 2006 Award: "Award"); PTV, at Ex. B.  Before the Court is the Employer's PTV and the Union's Motion to Confirm the Award ("MTC"), both brought

under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. For the following reasons, the Court PARTIALLY VACATES the Award, and REMANDS the Award to the Arbitrator to recalculate damages to be awarded the Union, if any, in accordance with this Order.

## II. BACKGROUND

The case before the Court arises out of the Union's 2003 campaign to organize those employees of the Employer who were not already represented by the Union or another union ("Organizing Campaign"). Nov. 30, 2004 Award, at 6. In the course of the campaign, a dispute arose between the Employer and the Union as to which employees constituted an appropriate bargaining unit pursuant to the rules of the National Labor Relations Board ("NLRB"), and thus which employees were eligible to vote in the representation elections proposed by the Union. Id. When the parties were unable to resolve the dispute, the Union petitioned the NLRB for certification of the Union's proposed bargaining unit. See California Pacific Medial Center, Case No. 20-RC-17876 (Dec. and Order of Reg. Dir. Robert H. Miller, Sep. 30, 2003), Docket No. 13, Decl. of Christopher Scanlan in Support of PTV ("Scanlan Decl."), Ex. A ("NLRB Reg. Dir. Dec.").

On September 30, 2003, following a six-day hearing, the NLRB's Regional Director Robert Miller ("Director") issued a Decision and Order on the Union's petition. Id. In the Decision and Order, the Director found that it was "plain from the positions taken by the Employer and Petitioner that both are of

2

1 the view that technical employees should be excluded from the
2 residual [bargaining] unit sought herein." Id. at 5. He further
3 found that "[t]he parties stipulated to the inclusion and
4 exclusion of a number of employee classifications, and that
5 "[i]ncluded among the stipulated exclusions are certain
6 classifications which may be considered technical." Id. However,
7 he also found that the parties disagreed regarding whether other
8 categories of employees should be considered technical. Id.

9     Ultimately, the Director did not choose to resolve this
10 disagreement. Rather, he found that the Union had proposed an
11 inappropriate bargaining unit and dismissed its position on that
12 ground. Id. at 7. In short, he found that because the Union had
13 organized other employees of the Employer into units that
14 consisted of both technical and non-technical employees, it must
15 similarly organize the residual employees of the Employer into a
16 bargaining unit which included both classifications. Id. Thus,
17 the proposed bargaining unit, whether constituted according to the
18 Union's definition of technical or according to the Employer's,
19 was not appropriate under the law. Id.

20     The Union appealed the Director's Decision and Order to the
21 full NLRB in Washington, D.C. ("Board"), arguing that because the
22 Union and the Employer had stipulated that the proposed bargaining
23 unit would consist of only non-technical employees, the Regional
24 Director's decision was erroneous. See California Pacific Medial
25 Center, Case No. 20-RC-17876 (Dec. of the NLRB Denying Request for
26 Review, Aug. 20, 2004), Scanlan Decl., Ex. C ("NLRB Dec."). The
27 Board's decision, issued on August 20, 2004, conceded that if the
28

3

1 parties "clearly agreed to" a bargaining unit which was "contrary
2 to established Board principles," it was possible for the Board to
3 approve such a unit. Id. at 1. The Board also "recognized that
4 the Regional Director stated that no party disputes that technical
5 employees should be excluded from the petitioned-for unit." Id.
6 The Board found, however, that this was not the same as a
7 statement that "all technical employees are excluded," and that
8 "some employees were excluded because they were technicals and
9 some were excluded for other reasons." Id. Thus, the Board found
10 that "the parties' agreements were [not] the equivalent of a
11 stipulation to exclude all technical employees," and thus there
12 was no reason to review the decision of the Regional Director.
13 Id. at 2.

14 Roughly simultaneous with the Board's consideration of the
15 Union's appeal, an arbitration between the parties was held. See
16 Nov. 30, 2004 Award. The arbitration was initiated by the Union
17 pursuant to the collective bargaining agreement ("CBA") in effect
18 between the parties, alleging that the Employer had violated the
19 CBA "in the manner that it had conducted itself during" the
20 Organizing Campaign. MTC at 1.

21 On November 30, 2004, the Arbitrator issued his first award
22 in the matter. See Nov. 30, 2004 Award. The Award found that the
23 Employer had violated various provisions of the CBA in the manner
24 it conducted itself during the Organizing Campaign. See id.
25 These violations included: failing to "distribute a jointly
26 signed reproduction of the Fair Representation and Code of Conduct
27 Section" of the CBA, id. at 33; inappropriately distributing "the

4

solicitation and distribution policy" to employees in the context of the Organizing Campaign, id. at 36; etc.  However, the chief violation found by the Arbitrator was the Employer's failure to correct the NLRB's determination, which the Arbitrator found erroneous, that the parties had not stipulated to the residual unit being composed only of non-technical employees.  Id. at 30.  Failing to do so, and instead taking advantage of this error, was "an act of bad faith" by the Employer, and thus a violation of its obligation under the CBA to act in good faith.  Id. at 31.

On the basis of these findings, the November 30, 2004 Award stated the following regarding remedy:

> [T]he Arbitrator is not authorized to conduct a representation election, or certify the employees within the Union's proposed bargaining unit, or in any other way to conduct and direct an election as the Union suggested the appropriate remedy would be in its closing brief.  The Arbitrator is restricted to the contract, and the damages, which arise as a consequence of the Employer's breach of that contract.  The Arbitrator does not have the ability to unring the bell, which Regional Director Miller chose for his own misguided reasons to ring.  What the Arbitrator can do is impose penalties on the Employer that are contemplated by this contract, or any other contract in which the parties agree to engage in certain behavior.

Id. at 44.  Accordingly, the Arbitrator found that the Union was entitled to recover whatever expenses it incurred in the Organizing Campaign, including attorneys' fees related to the Union's petition to the NLRB.  Id.  The Arbitrator directed the Union to provide him with "an accounting listing in detail the expenses associated with" the Organizing Campaign, including the NLRB petition.  Id.  "Once the Arbitrator has received the Union's accounting, the Employer will have an opportunity to respond to

5

1  that accounting and challenge any specific amounts that it
2  believes to be inappropriate.  Once that challenge, if any, has
3  been submitted, the arbitrator will then issue a final
4  determination with respect to the amount of money the Employer
5  will be directed to pay."  Id. at 44-45.
6      On May 19, 2006, after the parties tried but failed to agree
7  on an amount of damages, the Arbitrator issued that final
8  determination, ordering the Employer to pay the Union "the sum of
9  $171,082.48 in organizing costs and attorneys' fee for its breach
10 of contract, plus interest of 6% from November 2004 forward."  May
11 19, 2006 Award at 12.  In reaching this number, the Arbitrator
12 considered the Union's accounting and the Employer's responses,
13 accepting most of the accounting but rejecting some on the basis
14 of the Employer's response.  See id. at 9-11.
15     On August 1, 2006, the Employer filed its PTV.  See Docket
16 No. 1.  And on October 4, 2006, the Union filed its MTC in
17 opposition.  See Docket No. 8.

### III. DISCUSSION

#### A. The Union's Procedural Arguments Fail

The Union makes two procedural arguments why the Court should not address the merits of the Employer's Petition to Vacate.  The first is that the Petition is untimely.  The Second is that the Employer has waived the arguments it raises in its PTV by failing to properly bring them before the Arbitrator.  Both fail

##### 1. The Employer'S PETITION TO VACATE IS TIMELY

The Union and the Employer both agree that the Employer had

6

100 days to file its petition to vacate after the Arbitrator rendered his final award. See PTV at 9; MTC at 5; San Diego County Dist. Council of Carpenters v. Cory, 685 F.2d 1137, 1142 (9th Cir. 1982). However, the parties are in dispute as to which of the Arbitrator's awards should be deemed final and thus to have triggered the 100 day statute of limitations. The Union argues that the Arbitrator's November 30, 2004 Award was final, and thus the 100 day period is long past. See MTC at 4-7. The Employer argues that the Arbitrator's November 30, 2004 award was not final and that, instead, the Arbitrator's May 19, 2006 was his final award, making the PTV, filed on August 1, 2006, timely. See PTV at 9-13. The Court finds that the Arbitrator's May 19, 2006 Award was the final award, and thus the PTV is timely.

The baseline and common sense rule governing a district court's jurisdiction under Section 301 of the NLRA to confirm, vacate or correct an arbitration award is expressed in the negative: "a court should refrain from reviewing an arbitrator's work until a final and binding award is issued." Kemner v. Dist. Council of Painting and Allied Trades No. 36, 768 F.2d 1115, 1118 (9th Cir. 1985). "To be considered 'final,' an arbitration award must be intended by the arbitrator to be a complete determination of every issue submitted." Millmen Local 550, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. Wells Exterior Trim, 828 F.2d 1373, 1375 (9th Cir. 1987) (internal quotations and modifications omitted).

The Ninth Circuit has created an exception and a qualification to the rule of finality as it is applied to a

1    district court's jurisdiction to hear a motion to confirm a labor
2    arbitration award, both which apply in only "the most extreme
3    cases." Millmen, 828 F.2d at 1375.  The exception arises in
4    unusual cases where it is necessary to enforce an interim award in
5    order to make a determination upon which a final award will be
6    based, such as when the interim award calls for a medical
7    examination which will determine the contents of the final award.
8    Id. (discussing Sunshine Mining Co. v. United Steelworkers of
9    America, 823 F.2d 1289 (9th Cir. 1987).  The qualification is that
10   awards not technically final will be considered final for the
11   purpose of confirmation where the only thing left for the
12   arbitrator to do is "complete the mathematical computations of the
13   award."  Id. at 1377 (discussing United Steelworkers v. Enterprise
14   Wheel & Car Corp., 363 U.S. 593 (1960).  For this qualification to
15   apply, "the issue of damages must be resolved," leaving the
16   arbitrator only to plug in already known or indisputable numbers.
17   Id. at 1377.

18       The Union bases its argument that the November 30, 2004 Award
19   was the final award, and thus triggered the limitations period, on
20   this latter qualification.  See MTC.  This argument fails for two
21   reasons.

22       First, it is abundantly clear that the November 30, 2004
23   Award did not resolve the issue of damages and leaving the
24   Arbitrator with only a mathematical computation to complete.  The
25   Award directs the Union "to provide to the Arbitrator an
26   accounting listing in detail the expenses associated with this
27   campaign within the timeframe the Arbitrator has directed above."
28

8

Nov. 4, 2004 Award at 44. It then provides that "the Employer will have an opportunity to respond to that accounting and challenge any specific amounts that it believes to be inappropriate." Id. at 44-45. And on the basis of the Union's and the Employer's submissions, "the arbitrator will then issue a final determination with the respect to the amount of money the Employer will be directed to pay." Id. at 45.

The Union makes much of the fact that the November 30, 2004 award "directed [the Employer] to pay the union damages," MTC at 6 (quoting Nov. 30, 2004 Award at 45), and that the Award listed the categories of damages which the arbitrator "anticipate[d]" would be included. Opp'n to PTV at 6. However, this does not constitute resolution of the damages issue, but rather resolution of the issue of liability for damages. Accordingly, the twelve-page May 19, 2006 Award does not consist of mere computations by the Arbitrator, but rather his resolution of the competing arguments offered by the Union and the Employer as to which damages fit into those categories and how they should be calculated. See, May 19, 2006 Award at 10-11. Thus, the November 30, 2004 Award does not qualify as the type of award which the Ninth Circuit intended to be excepted from the rule of finality.

Second, and more fundamentally, the Court does not believe that the exception or qualification to the rule of finality which the Ninth Circuit has found to apply in the context of an accelerated motion to confirm an arbitration award under Section 301 of the LMRA should apply to the triggering of the statute of limitations for a petition to vacate an award under that section.

9

"The purpose of a statute of limitation is to prevent assertion of stale claims against a defendant." Azer v. Connell, 306 F.3d 930, 935 (9th Cir. 2002) (internal quotations omitted). It is hard, if not impossible, to imagine how a petition to vacate filed 100 days after an arbitrator issued his or her last award could somehow be characterized as stale, thus necessitating a rule which would require that a petitioner file its petition 100 days after the issuance of some prior award.

What's more, creating such a rule would place potential petitioners in an impossibly uncertain position. Such petitioners would be forced to constantly evaluate whether any award could be deemed final and trigger the limitations period. Likely, this would consistently send potential petitioners for vacatur to the district court following any interim award which was not in their favor. Such a result would be directly contrary to "the fundamental federal labor policy of deference to contractual dispute resolution procedures and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense of court proceedings." Millmen, 828 F.2d at 1375.

Thus, for the purposes of triggering the statute of limitations period for filing a petition to vacate an arbitration award under Section 310 of the NLRA, "final" means final, without qualification or exception: the period will not be triggered until the arbitrator has issued his or her last, and thus final, award.

10

### 2. The Employer Has Not Waived its Right to Make the Arguments Raised its Petition

The Union also argues that the Employer's PTV should be denied "as it relates to the November 30, 2004 Award" because the Employer failed to request the Arbitrator to reconsider his November 30, 2004 Award prior to him rendering his May 19, 2006 Award, MTC at 7, and because the Employer "did not even raise the issue of arbitrability during the first arbitration." Opp'n to PTV at 7. Both legs of this argument fail.

First, there is no rule that makes submission of a request for reconsideration of an award to the arbitrator a precondition of petitioning a district court to vacate that award. <u>United Steelworkers of America, AFL CIO.CLC, v. Smoke-Craft, Inc.</u>, 652 F.2d 1356 (9th Cir. 1981), which the Union cites in support of such a precondition is wholly inapposite. The case stands only for the unremarkable proposition that a party cannot raise arguments in a petition to vacate that it never made before the arbitrator. <u>See</u> <u>id.</u> at 1360. The case says absolutely nothing about requiring a party to ask an arbitrator to reconsider his or her award before submitting a petition to vacate to a district court.[1]

---

[1] Indeed, it seems odd that the Union would make such an argument simultaneously with its argument that the November 30, 2004 Award was final and reviewable. The later argument is based on the premise that the November 30, 2004 Award conclusively resolved all the issues presented to the Arbitrator, and thus the award was ripe for review by this Court. However, if the Employer had the opportunity in subsequent hearings to ask the Arbitrator to reconsider his November 30, 2004 Award, as the Union argues the Employer did and should have taken, the November 30, 2004 Award did not conclusively resolve all issues presented to the Arbitrator, and thus the Award was not ripe for review by this Court.

11

Second, the Union's argument that the Employer waived its right to petition to vacate the Award because the Employer "did not even raise the issue of arbitrability during the first arbitration" fails for the obvious reason that the Employer has not raised arbitrability as grounds for vacating the award. See Oppo'n to PTV at 7. Rather the Employer argues that the Award should be vacated on the grounds that it violates public policy and does not draw its essence from the CBA. See PTV. These grounds are wholly distinct from the issue of arbitrability. See Oil, Chemical and Atomic Workers, Intern. Union, Local No. 4-228 v. Union Oil Co. of Cal., 818 F.2d 437, 440 (5th Cir. 1987) ("Enforcement of an award should be denied only if the dispute was not arguably arbitrable, if the arbitrable decision did not draw its essence from the collective bargaining agreement, or if enforcement of the award by the court would violate public policy."); see also Sprewell v. Golden State Warriors, 266 F.3d 979, 986 (9th Cir. 2001) (listing grounds for vacating an arbitration award). Thus, this part of the Union's argument regarding waiver is also without merit.

Having determined that there are no procedural bars to it reviewing the Employer's PTV, the Court does so.

**B. The Employer's Petition to Vacate is Meritorious**

**1. Standard of Review**

When a district court reviews an arbitration award in a labor dispute under Section 301 of the NLRA, the scope of its review is "extremely narrow." Federated Dept. Stores v. United Foods & Commercial Workers Union, 901 F.2d 1494, 1496 (9th Cir. 1990).

12

> Judicial scrutiny of an arbitrator's decision is extremely limited. The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence from the contract. If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.

Sheet Metal Workers Intern. Ass'n, Local No. 359, AFL-CIO v. Arizona Mechanical & Stainless, Inc., 863 F.2d 647, 653 (9th Cir. 1988)(internal citations omitted).

Nonetheless, the Ninth Circuit has "identified four instances in which vacatur of an arbitration award under Section 301 is warranted: (1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud." Sprewell, 266 F.3d at 986.[2]

The Employer argues that the Award should be vacated on the grounds that it violates public policy and it does not draw its essence from the CBA. See PTV. The Court finds that the Award, in part, violates public policy and partially vacates that portion on this ground. Because the part of the Award which the Court vacates is the same part which the Employer claims does not draw

---

[2] The Court construes this language to mean, and understands the Ninth Circuit to have intended it to mean, that that each of these four grounds provides an independent basis for vacatur.

13

its essence from the CBA, the Court does not address this argument.

### 1.  **The Arbitrator's Award Violates Public Policy by Contradicting the NLRB's Ruling on Representation**

The Arbitrator's finding that the Employer and the Union stipulated as to the composition of the appropriate bargaining unit contradicts the NLRB's holding that the parties did not so stipulate.  See November 30, 2004 Award at 30; NLRB Dec. at 1. Thus, the part of the Award which is based on that finding runs contrary to public policy and must be vacated.

In Carey v. Westinghouse Elec. Corp., the Supreme Court articulated what has become known as the supremacy doctrine.  375 U.S. 261, 272 (1964).  In the words of the Ninth Circuit, "the supremacy doctrine announced in Carey establishes that an NLRB decision on a representational issue overrides an arbitrator's decision on the same issue."  A. Dariano & Sons, Inc. v. District Council of Painters No. 33, 869 F.2d 514, 517 (9th Cir. 1988). The NLRB's decision on a representational issue reflects its consideration of the interests of all the parties potentially affected by such a decision, including the general public, while the decision of an arbitrator on this issue reflects the arbitrator's consideration of only the interests of the parties before it.  See Cannery Warehousemen, Food Processors, Drivers and Helpers for Teamsters Local Union #748 v. Haig Berberian, Inc., 623 F.2d 77, 81-82 (9th Cir. 1980).  Thus, to allow the latter to

14

trump the former would run counter to public policy.  Id.

The Union argues that an arbitrator's award only violates the supremacy doctrine when it "directly conflict[s] with an NLRB decision," and further, that the Award should be upheld because it dealt with issues which were "primarily contractual," as opposed to those which were "primarily representational in nature." Opp'n to PTV at 3.  These arguments, however, miss the point.  An arbitrator's award need not be in direct conflict with a representational decision of the NLRB or be primarily representational in nature to run contrary to the supremacy doctrine; but, rather, it need only be "logically inconsistent [with an NLRB decision] . . . when a representational issue is at stake."  A. Dariano & Sons, 869 F.2d at 517.

The Arbitrator found that the Union and the Employer had stipulated as to the composition of the bargaining unit, such that the unit consisted of only residual non-technical employees.  See, e.g., November 30, 2004 Award at 30.  The NLRB, on the other hand, found that no such stipulation existed.  NLRB Dec. at 2.  Whether this finding by the NLRB was a "mistake," as the Arbitrator claimed, is not for this Court to decide.  See November 30, 2004 Award.  Rather, the Court must enforce the NLRB's decision on this representational issue and vacate that portion of the Award which

15

1   is based on the Arbitrator's conflicting findings.[3]

3   **V.   CONCLUSION**

4   For the foregoing reasons, the portion of the Award which is premised on the Arbitrator's finding that the parties stipulated as to an appropriate bargaining unit is VACATED.  Accordingly, the case is REMANDED to the Arbitrator to recalculate the award of damages to the Union:  The Arbitrator should award damages only for injuries to the Union from violations which do not relate to the Arbitrator's legally erroneous finding that the parties stipulated to an appropriate bargaining unit.  The Union's request for an award of attorneys' fees is DENIED.

IT IS SO ORDERED.

Dated: January 9, 2007

_____
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that other findings by the Arbitrator regarding violations of the CBA by the Employer do not conflict with the NLRB's decision on representational issues.  See, e.g., Nov. 30, 2004 Award at 36 (finding that the Employer violated the CBA in the "context and timing" of its distribution to employees of "the solicitation and distribution policy.")

16